CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 15 2012

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **VERONICA L. MCCALL, Plaintiff,** | ) | **Civil Action No. 7:11-cv-00449** |
| **v.** | ) | **MEMORANDUM OPINION** |
| **AMERICAN ELECTRIC POWER SYSTEM LONG TERM DISABILITY PLAN, Defendant.** | ) | **By: Samuel G. Wilson United States District Judge** |

This is an action by plaintiff, Veronica L. McCall, against defendant, American Electric Power System Long Term Disability Plan (the "Plan"),[1] pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1000, *et seq.* (2006) ("ERISA"), alleging that the Plan improperly denied her long-term disability ("LTD") benefits.[2] The Plan is a welfare benefit plan maintained by American Electric Power Service Corporation ("AEP") for the benefit of its employees. Ms. McCall has LTD coverage under the Plan as an AEP employee. The Prudential Insurance Company of America ("Prudential") is the Plan's claim administrator and has discretionary responsibility to process LTD claims. The matter is before the court on the parties' cross-motions for summary judgment. Despite a voluminous administrative record in excess of seven hundred pages, including the reports of six third-party experts, "the heart of the matter," as Ms. McCall's counsel put it during oral argument, is whether Prudential's decision to deny her claim was the result of a deliberate, principled reasoning process. According to Ms.

[1] The record contains two plan documents, the first of which became effective December 31, 2008 ("Plan I") (Ex. 1, ECF No. 11-1), and the second of which became effective May 16, 2010 ("Plan II") (Ex. 2, ECF No. 11-2), referred to collectively as the Plan.

[2] Ms. McCall filed her original complaint in the Circuit Court for the City of Roanoke on August 11, 2011, and the Plan removed it pursuant to 28 U.S.C. §§ 1441 and 1446 with jurisdiction asserted under 28 U.S.C. § 1331.

McCall, it was not the result of a deliberate principled reasoning process because Prudential failed to consider and account for a report from a treating physician and test results supporting his conclusions which indicate that Ms. McCall has "a severe cognitive impairment." The court concludes that Prudential did review, consider, and reject that evidence in accordance with its discretion. Accordingly, the court grants the Plan's motion for summary judgment.

**I.**

Ms. McCall split time between duties as a call center representative and as an administrative associate in the human resources department at AEP. (Admin. R. 684, Nov. 23, 2011.) Her job duties were "sedentary" that involved lifting only "negligible weight" and that were performed "mostly sitting." (Id. at 592.) On September 25, 2009, she began a medical leave of absence from AEP due to back pain, depression, chronic fatigue, and cognitive and memory issues. She underwent surgery on that day, from which she later suffered complications, and she also had thyroid issues that culminated in a thyroidectomy. On February 19, 2010, not long before her paid sick leave was due to expire, she applied for LTD benefits under the Plan due to cognitive problems (of an unknown etiology or perhaps secondary to her physical problems and the treatment of those problems) that she claims prevented her from returning to work. Prudential denied Ms. McCall's initial claim and her administrative appeals.

For the first twenty-four months from the date of disability,[3] "disability" is defined under the Plan as "an illness or injury that requires the regular treatment of a duly qualified physician that may reasonably be expected to prevent [the employee] from performing the material duties of [her] own occupation with AEP" for over 1040 hours of regularly scheduled work (twenty-six

[3] The Plan agrees September 25, 2009 is Ms. McCall's date of disability for purposes of her LTD claim. (Admin. R. 661.)

weeks for a forty-hour work week). (Plan I at 3, ECF No. 11-1; Plan II at 4, ECF No. 11-2.)[4] This 1040 hour waiting period is the "elimination period." (Admin. R. 660.) Ms. McCall would have satisfied the elimination period on March 27, 2010 had she otherwise met the test for disability. (Id. at 661.) The Plan requires "objective medical evidence" and cautions that a "letter from [the employee's] treating physician merely stating that [the employee is] unable to work without any supporting information will not be considered as conclusive proof of [her] disability." (Plan I at 12; see also Plan II at 14.)

Ms. McCall submitted extensive medical records in support of her LTD claim and offered supplemental evidence in connection with her administrative appeals. Prudential retained a total of six third-party experts—three clinical psychologists, an orthopedist, a rehabilitation physician, and an occupational physician—to perform full record reviews. Those experts found no impairment preventing Ms. McCall from returning to work.[5] The extensive administrative record notwithstanding, Ms. McCall's suit focuses entirely on a narrow range of evidence:

[4] After twenty-four months from the date of disability, the definition of disability changes to "an illness or injury that requires the regular treatment of a duly qualified physician that may reasonably be expected to prevent [the employee] from performing the duties of *any* occupation for which [the employee is] reasonably qualified by [her] education, training and experience." (Admin. R. 660) (emphasis added).

[5] Dr. Jennifer Nash-Wright, clinical psychologist, concluded that the clinical evidence did not support "functional impairment from a psychological condition or diagnosis at present." (Admin. R. 583). Dr. William Humphries, orthopedist, concluded that Ms. McCall was physically capable of returning to work in a sedentary capacity. (Id. at 576.) Dr. Barbara Parke, rehabilitation physician, concluded that outside of one day off of work for Ms. McCall's lumbar puncture and two weeks off of work for her thyroidectomy and recovery, the evidence did "not support any medically necessary restrictions or limitations for sedentary activities . . . at work from [August 7, 2009] forward." (Id. at 618.) Dr. Robert Yohman, clinical psychologist, concluded that there was "no consistent and valid evidence that Ms. McCall has [or] had any psychological or cognitive symptoms that would restrict or limit the skills noted in the question or for the time period specified." (Id. at 176.) Dr. Russell Green, occupational physician, noted the concern of several other physicians that Ms. McCall "is unable to work at all, but the basis for their opinion [he believed did] not take into account the entirety of the medical record." (Id. at 16.) Dr. Alfonso Martinez, clinical psychologist, concluded that Ms. McCall's "limitations starting September 25, 2009 should have been short-term, and do not constitute a permanent functional impairment that would continue to impair the claimant's ability to work on a full-time basis." (Id. at 23.)

neuropsychiatric testing by Dr. Thomas Gualtieri, psychiatrist, on January 28, 2010; follow-up neuropsychiatric testing by Dr. Sandeep Valshnavi, psychiatrist, on April 29, 2010; and a report by Dr. John Heil, clinical psychologist, dated May 7, 2011. Dr. Gualtieri's testing consisted of patient-completed scales of psychological-emotional functioning, a thirty-minute battery of computerized cognitive screening, and four face-to-face neuropsychological tasks. (Admin. R. 20.) Dr. Gualtieri's testing also included a "validity indicator" purportedly designed to assess Ms. McCall's effort. (Id.) Dr. Valshnavi completed his follow-up evaluation of Ms. McCall after she stopped taking several medications. (Id. at 153.) Dr. Valshnavi for the most part duplicated Dr. Gualtieri's neuropsychiatric testing and reported that Ms. McCall's "neurologic exam [was] essentially unchanged." (Id.) Dr. Heil treated Ms. McCall, reviewed her medical records, and performed a functional capacity evaluation. Dr. Heil stated that Ms. McCall was suffering from "a protracted health crisis" and that if she returned to work "her condition would certainly deteriorate." (Id. at 31–32.) He concluded that the "combination of medical and psychological conditions render[ed] her unable to work in any environment at [that] time." (Id. at 32.)

Dr. Yohman, a clinical psychologist who concluded that there was "no consistent and valid evidence that Ms. McCall has [or] had any psychological or cognitive symptoms that would restrict or limit the skills noted in the question or for the time period specified," (id. at 176), reviewed Dr. Gualtieri's testing, and Dr. Yohman characterized it as "not well validated as a [measure of] symptom validity and effort management by current research literature," (id. at 175). According to Dr. Alfonso Martinez, a clinical psychologist who concluded that Ms. McCall's "limitations starting September 25, 2009 should have been short-term, and do not constitute a permanent functional impairment that would continue to impair the claimant's ability to work on a full-time basis," (id. at 23), the validity indicator used by Dr. Gualtieri to test effort

in Ms. McCall's first round of neuropsychiatric testing "has fallen out of favor because it is not sufficiently sensitive to suboptimal effort," (id. at 24). He concluded it "would be an error to draw any conclusions about the claimant's effort based on the" validity indicator used. (Id.) Dr. Martinez also noted that Dr. Valshnavi did not use a test to assess effort for the April testing. (Id.) Dr. Martinez further commented that the neuropsychiatric testing did "not begin to address [Ms. McCall's] cognitive functioning the way that traditional, face-to-face neuropsychological testing can." (Id. at 22.) Both Dr. Martinez and Dr. Russell Green, an occupational physician, noted Dr. Heil's report in their own reports, (id. at 14, 21–22); later in his report, Dr. Green stated that he disagreed with recommendations provided by Ms. McCall from various experts because "the basis for their opinion [did] not take into account the entirety of the medical record," (id. at 16).

On July 28, 2011, Prudential issued its final decision to deny Ms. McCall's claim and informed Ms. McCall of her right to file a claim under ERISA. In Prudential's letter informing Ms. McCall of its denial of her second and final appeal, Appeals Specialist Kimberly Cyr quoted extensively from the reports of Dr. Martinez and Dr. Green and stated that Prudential had "thoroughly evaluated the medical information on file, as well as the documentation received with Ms. McCall's appeal." (Id. at 666.) Cyr stated that it was Prudential's conclusion that while Ms. McCall "had periods of impairment due to her lumbar puncture (October 1, 2009 through October 3, 2009), thyroidectomy (August 4, 2010 through August 18, 2010), and depression (September 25, 2009 through March 25, 2009 [sic]) (six months))," she was "not considered disabled as of March 27, 2010, the date her elimination period" would have been satisfied. (Id.)

**II.**

Ms. McCall contends that Prudential abused its discretion by selectively relying on evidence that seemed to support its denial while ignoring evidence that favored her claim of

disability, in particular Dr. Heil's report and neuropsychiatric testing results. The court concludes that a fair reading of the record indicates that Prudential did not fail to consider the evidence, but rather considered and rejected it on the grounds that Dr. Heil's report was unsupported and that the neuropsychiatric testing failed to adequately assess Ms. McCall's effort. Because, the court finds conflicting views of the evidence concerning the severity of Ms. McCall's cognitive impairment, the court finds that Prudential's decision was not unreasonable in accepting one and rejecting the other.[6]

As the Plan confers discretion on Prudential to determine eligibility, the court reviews the decision to deny benefits under the abuse of discretion standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989); Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). Under the abuse of discretion standard, Ms. McCall has the burden of demonstrating that Prudential's decision to deny her claim was "unreasonable." Marcum v. Zimmer, 887 F. Supp. 891, 896 (S.D.W. Va. 1995); Saah v. Contel, 780 F. Supp. 311, 315 (D. Md. 1991), *aff'd*, 978 F.2d 1256 (4th Cir. 1992). A decision to deny ERISA benefits is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984), *abrogated on other*

[6] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "When cross-motions for summary judgment are before a court, the court examines each motion separately." Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 354 (4th Cir. 2011). Each party bears the burden of informing the court of the basis for its motion, and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

*grounds by* de Nobel v. Vitro Corp., 885 F.2d 1180 (4th Cir. 1989) (citations omitted). Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance" of evidence. Id. (internal quotation marks and citation omitted).

A claim administrator may not "selectively rely upon bits and pieces of information that support[ ] a decision to deny benefits, rather than reading the physicians' accounts in a reasonable manner." Case v. Cont'l Cas. Co., 289 F. Supp. 2d 732, 740 (E.D. Va. 2003); see also Myers v. Hercules, 253 F.3d 761, 766 (4th Cir. 2001). However, it is not enough that a different conclusion may have been a logical or even a better decision. Myers, 253 F.3d at 766. The court must accept "any reasonable interpretation" given by the Plan. Eckelberry v. ReliaStar Life Ins. Co., 469 F.3d 340, 343 (4th Cir. 2006). "It is *not* unreasonable . . . for a plan administrator to give greater weight to its own consultants' determinations than to the recommendations of the beneficiary's own doctor." Marsteller v. Life Ins. Co. of North Am., 24 F. Supp. 2d 593, 596 (W.D. Va. 1998) (citation omitted).

Ms. McCall's motion for summary judgment focuses on what she characterizes as a selective parsing of medical evidence. Ms. McCall argues that Prudential did not follow a deliberate, principled reasoning process because it ignored neuropsychiatric testing and Dr. Heil's report.[7] The Plan argues the reports were incorporated into the full review by its third-party experts and properly discounted. The court concludes that Prudential considered that evidence and acted within its discretion in discounting it. Both the neuropsychiatric testing and Dr. Heil's report were referenced in reports from third-party experts that Prudential relied upon heavily in its determination. Dr. Yohman discounted Dr. Gualtieri's testing because he

[7] Ms. McCall also argues that if Prudential found the testing she provided insufficient then it should have requested additional testing. But each of Prudential's third-party experts was able to come to a conclusion as to Ms. McCall's impairment after discounting the neuropsychiatric testing and weighing it against the other evidence in the record.

Case 7:11-cv-00449-SGW Document 19 Filed 06/15/12 Page 7 of 9 Pageid#: 131

contended that it was "not well validated as a [measure of] symptom validity and effort management by current research literature." (Admin. R. 175.) Dr. Martinez found Dr. Gualtieri's testing unpersuasive because it was "not sufficiently sensitive to suboptimal effort" and noted that Dr. Valshnavi did not used a test to assess effort for the April testing (Id. at 24.) Dr. Martinez and Dr. Green both referenced Dr. Heil's report; later in his report, Dr. Green stated that he disagreed with recommendations provided by Ms. McCall from various experts because "the basis for their opinion [did] not take into account the entirety of the medical record." (Id. at 14, 16, 21–22.) Prudential referenced Dr. Gualtieri's testing in its letter informing Ms. McCall of its initial decision, (id. at 708), Dr. Gualtieri's and Dr. Valshnavi's testing in its letter informing Ms. McCall of its decision to deny her first appeal, (id. at 687–88, 690–91), and Dr. Martinez's appraisal of their testing in its letter informing Ms. McCall of its decision to deny her second and final appeal, (id. at 665–66). Consequently, fairly read, the record supports the conclusion that Prudential considered and rejected the conclusions of Ms. McCall's experts. Given conflicting opinions offered by different experts, Prudential had discretion to give greater weight to the evaluations of the third-party experts it found more persuasive. See Marstelle., 24 F. Supp. 2d at 596. Accordingly, the court grants the Plan's motion for summary judgment.

**III.**

The administrative record shows evidence that could support a conclusion that Ms. McCall was disabled and evidence that could support a conclusion that she was not. It is the exclusive province of the claim administrator to weigh conflicting evidence. Prudential exercised that discretion and concluded that the record as a whole did not support a finding that Ms. McCall was disabled. The court concludes that Prudential's determination was the result of a deliberate, principled reasoning process and was supported by substantial evidence. Thus, it

was not an abuse of discretion. As there are no genuine issues of material fact, the court grants the Plan's motion for summary judgment.

**Enter**: June 15, 2012.

UNITED STATES DISTRICT JUDGE